**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                 Case No. 3:19-cr-207-MMH-MCR

MARIO CORREA JACKSON

---

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Mario Correa Jackson's Motion to Dismiss (Doc. 96; Motion), filed on September 16, 2021. In the Motion, Jackson requests that the Court dismiss the health care fraud object of the conspiracy charged in Count One of the Indictment (Doc. 1). Jackson also seeks dismissal of any forfeiture allegations that are conditioned upon his conviction of conspiracy to commit health care fraud. Motion at 1; Indictment at 13-14. The government filed a response in opposition to the Motion on October 26, 2021. See United States' Response to Defendant Jackson's Motion to Dismiss (Doc. 101; Response). On April 8, 2022, the Court held a hearing on the Motion at which both the Government and counsel for Jackson presented oral argument. See Minute Entry (Doc. 113). In light of certain issues raised at the hearing, the Court took the Motion under advisement and directed the parties to submit supplemental briefing. Id.

On May 6, 2022, Jackson filed Defendant's Initial Supplemental Brief in Support of Defendant's Motion to Dismiss (Doc. 117; Defendant's Supplemental Motion). The Government followed by filing its supplemental briefing in response on May 27, 2022, see United States' Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 122; Government's Supplemental Response), and Jackson replied on June 10, 2022, see Defendant's Reply to the United States' Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 127; Defendant's Supplemental Reply). Accordingly, the matter is ripe for resolution.

I.  **Relevant Background**

On November 13, 2019, a grand jury sitting in the Middle District of Florida returned an eight-count Indictment charging Jackson and two co-Defendants with various crimes. In Count One, the United States charges Defendants Qualla Miller, Earl Smalls, and Mario Correa Jackson with conspiring to commit the following offenses: (1) the offering and paying of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B), (2) the soliciting and receiving of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and (3) health care fraud, in violation of 18 U.S.C. § 1347. See generally Indictment.[1] The relevant forfeiture allegation states:

---

[1]  Because the Motion does not address Counts Two through Eight, the Court does not discuss those counts here.

2

> Upon conviction of a conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, the defendants . . . shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense; and pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Id. at 13-14.

As to the underlying facts of the alleged conspiracy charged in Count One, the government contends that Miller and Smalls were patient recruiters for CASEPARK, Park and King Pharmacy, and other co-conspirator pharmacies. Id. at 1. According to the United States, Jackson was a patient recruiter for Smalls. Id. at 2. Beginning around May 2014, and continuing until around August 2015, Defendants purportedly recruited TRICARE beneficiaries and directed them to physicians, including Dr. Felmore Agatep, to obtain prescriptions for compounded creams. Id. at 6. The Government alleges that these co-conspirator physicians used "preprinted prescriptions featuring compounded creams with high rates of reimbursement for such generalized ailments as pain and scars" that were "routed through Park and King Pharmacy, and other conspirator pharmacies to be filled." Id. The Government contends that once TRICARE paid Park and King Pharmacy for the compounded creams, Defendants received illegal kickbacks based on the number of prescriptions they directed to the conspirator pharmacies. Id. at 7.

Defendants allegedly used these proceeds to pay illegal kickbacks to Dr. Agatep in the amount of $100 per patient. Id.

On November 20, 2019, Jackson entered a plea of not guilty as to all of the charges against him. See Minute Entry (Doc. 35). He then moved to dismiss the health care fraud object of Count One of the Indictment pursuant to Rule 12(b)(3)(B)(v), Federal Rules of Criminal Procedure (Rule(s)), on the theory that the Indictment fails to "fairly, adequately, or constitutionally allege a § 371 conspiracy to commit health care fraud." See Motion at 2. Jackson contends that the Indictment is devoid of "any facts that could constitute fraud, misrepresentation, or falsity, neither specifically nor generally." Id. If the health care fraud object of Count One is dismissed, Jackson argues, the Court should also dismiss the forfeiture allegations related to health care fraud. Id. at 2-3. Regardless of whether the health care fraud object is due to be dismissed, Jackson maintains the health care fraud forfeiture allegations should still be dismissed because they reference a section 1349 conspiracy with which Jackson is not charged. Id.

In Response, the government asserts that the Indictment "makes specific allegations of fraud against each defendant, tracking the statutory language." Response at 1. The Government maintains that Jackson has sufficient notice of the conduct constituting health care fraud, which is

4

> recruiting TRICARE eligible individuals to receive compounding cream prescriptions, paying TRICARE eligible individuals to provide their TRICARE information, and submitting fraudulent claims to TRICARE for reimbursement for prescriptions that were not legitimately prescribed.

Id. at 7. As to the forfeiture allegations, the government concedes that the forfeiture is improperly alleged. Id. at 8. Nevertheless, because the statutory authority for forfeiture under sections 371 and 1347 is the same, the government insists that "the forfeiture has properly been pled and reference to section 1349 was merely a scrivener's error and should be stricken." Id. at 8-9.

After the April 8, 2022 hearing, the Court asked the parties to address three issues in their supplemental briefing: (1) what impact United States v. Fischetti, 450 F.2d 34, 37 (5th Cir. 1971) has on the arguments raised in the Motion; (2) whether a bill of particulars could cure any purported defect in the Indictment, and (3) whether the Government can sufficiently allege a multi-object conspiracy to commit health care fraud without alleging an overt act that supports the health care fraud object. See Transcript (Doc. 114) at 11-12. In Defendant's Supplemental Motion, Jackson argues that although the court in Fischetti stated that an essential element of a conspiracy is an overt act by a member in furtherance of the agreement, the language of the applicable statute requires the act "effect the object of the conspiracy." Defendant's Supplemental Motion at 2 (citing 18 U.S.C. § 371 and United States v. Joseph, 806 F. App'x 910, 912 (11th Cir. 2020)). According to Defendant, the Government cannot rely

5

on this overt act to support the conspiracy to commit health care fraud charge without running afoul of the Eleventh Circuit Court of Appeal's decision in United States v. Medina, 485 F.3d 1291 (11th Cir. 2007). Id. If the Government modifies its theory and alleges that the overt act was the submission of fraudulent prescriptions to TRICARE, then Defendant argues he "could be convicted on a constructively amended Indictment." Id. Defendant maintains that the Indictment cannot be cured by a bill of particulars because there are no fraud allegations in the first place that the bill of particulars could amplify. Id. at 7. Thus, if the Government were permitted to file a bill of particulars adding allegations of fraud, it will be permitted to amend the Indictment without action of the grand jury. Id.

In the Government's Supplemental Response, it notes that the Fifth Circuit in Fischetti "held that it is not necessary that the object of the conspiracy be described in the detail necessary in an indictment for the substantive offense itself, and every element of the substantive offense need not be alleged within the conspiracy count." Government's Supplemental Response at 1-2. However, it "concedes that the indictment as plead in Count One lacks specificity as to the health care fraud allegation." Id. at 2. The Government explains

> [t]he United States' theory of prosecution as to Count One has always been that the conspirators, including the defendant, paid TRICARE beneficiaries for their personal identifying information and used it to generate false and fraudulent prescriptions for pain creams which were not medically necessary and were fraudulently

6

> submitted to TRICARE for reimbursement. Also, as part of the conspiracy, the conspirators, including the defendant, paid and received kickbacks for submitting fraudulent prescriptions to various pharmacies which were filled, and the claims were paid by TRICARE.

Id. at 2. The Government requests that it be permitted to file a bill of particulars to include allegations regarding the co-conspirators purported submission of false and fraudulent prescriptions but "recognizes that may not cure the defect in the indictment as to the health care fraud." Id. In reply, Defendant disputes that the submission of fraudulent prescriptions was always the Government's theory of the case because it was not included anywhere in the Indictment. See Defendant's Supplemental Reply at 1. Additionally, Defendant reiterates its argument that a bill of particulars cannot cure the defect in the Indictment. Id.

## II. Standard of Review

Under Rule 7(c)(1), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted). An indictment is generally sufficient "if it sets

forth the offense in the words of the statute." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute). Indeed, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime." United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983). However, an indictment that follows the statute is nevertheless insufficient if it fails to sufficiently apprise the defendant of the charged offense. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). Thus, if an indictment tracks the language of the criminal statute, it must include enough facts and circumstances to inform the defendant of the specific offense being charged. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction." See Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989). An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[2] Additionally,

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes. It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

Sharpe, 438 F.3d at 1263 (internal citation and quotation omitted). Notably, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). However, "[i]t is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983).

## III. Discussion

Section 371 makes it a crime for,

> two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy . . . .

18 U.S.C. § 371. Here, the government alleges that Defendants conspired to, among other offenses, commit health care fraud against the United States. The substantive health care fraud statute, 18 U.S.C. § 1347, provides that

> [w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice –
>
>   (1) to defraud any health care benefit program; or

9

> > (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347. The Eleventh Circuit Court of Appeals has instructed that,

> [t]o pass constitutional scrutiny, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. See Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime. Hamling, 418 U.S. at 117, 94 S.Ct. at 2907. Furthermore, an indictment for conspiracy to commit a criminal offense is not required to be as specific as a substantive count. United States v. Ramos, 666 F.2d 469, 475 (11th Cir.1982).

United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985). Nevertheless, in the Government's Supplemental Response, it "concedes that the indictment as pled in Count One lacks specificity as to the health care fraud allegation." See Government's Supplemental Response at 2. Despite this, the Government contends in its Supplemental Response that its theory "has always been" that the co-conspirators agreed to pay "TRICARE beneficiaries for their personal identifying information and used it to generate false and fraudulent prescriptions for pain creams which were not medically necessary and were fraudulently submitted to TRICARE for reimbursement." Id. However, the Indictment contains no such allegations. See generally Indictment; see also

10

Medina, 485 F.3d at 1299 (in evaluating the sufficiency of the evidence under the facts of that case finding that "paying kickbacks alone is not sufficient to establish health care fraud . . . without someone making a knowing false or fraudulent representation to [a healthcare benefit program].").

In its Response, the Government had initially relied on the Eleventh Circuit Court's decision in United States v. Reddy, 534 F. App'x 866, 877 (11th Cir. 2013) to argue that it adequately alleged health care fraud. See Response at 7. This argument too is unavailing. In Reddy, the defendant was charged with the substantive offense of health care fraud and challenged the indictment on the grounds that it failed to allege the "affecting commerce" element of health care fraud. The court found that "the language and facts alleged within the Indictment as a whole support[ed] the inference that the grand jury understood that 'affecting commerce' was part of the § 1347 offense." Specifically, the Court held,

> [the relevant counts] provide[d] the statutory reference to § 1347 and track[ed] the statutory offense language. In addition, [the counts were] prefaced with "paragraphs One through Three of Counts One through Twenty Five," which detail the workings of the alleged health care fraud, including how RSI clients submitted claims for reimbursement nationwide to Medicare and other health care benefit plans for reimbursement, and the reported gain to RSI in revenue upwards of five million dollars. For these reasons, although the "affecting commerce" question was not presented in so many words, we conclude that the grand jury necessarily found that probable cause existed in a context where commerce was affected.

Id. Aside from the distinct legal issue presented, the factual allegations in the indictment in Reddy related to fraud are manifestly different than those here. Notably, the indictment in Reddy included allegations that the defendant "claim[ed] to have performed health care services that he did not in fact perform," that he "fraudulently signed and submitted radiology reports for approximately 40,000 patients" when he never even reviewed the film, that he passed off reports created by Radiology Practice Assistants as having been reviewed by a board-certified radiologist, and that he knew "the hospital or other RSI client then submitted bills to Medicare and private insurance companies for these tests, including for the supposed professional services of a qualified radiologist that never in fact occurred." See United States v. Reddy, Case No. 1:09-cr-483, Indictment (Doc. 1), (N.D. Ga. Nov. 3, 2009).

Similar specific allegations of health care fraud are also found in the indictments which other courts found to sufficiently allege a conspiracy to commit health care fraud. See United States v. Chalker, 966 F.3d 1177, 1190 (11th Cir. 2020); see also United States v. Bane, No. 8:09CR352-T-33MAP, 2010 WL 962779, at *1 (M.D. Fla. Mar. 16, 2010); see also United States v. Robinett, No. 3:15-CR-559-D(6), 2018 WL 1640116, at *2-3 (N.D. Tex. Apr. 5, 2018); see also United States v. Weekes, No. 17-20155, 2018 WL 3956487, at *1 (E.D. Mich. Aug. 17, 2018); see also United States v. Thomley, No. 2:18-CR-18-KS-MTP, 2018 WL 6492955, at *3 (S.D. Miss. Dec. 10, 2018).

12

For example, in Chalker, the indictment included the substantive elements of health care fraud and contained assertions that the purpose of the conspiracy was for defendants to "unlawfully enrich themselves" by "submitting and causing the submission of false and fraudulent claims to Medicare, TRICARE, and Medicaid." 966 F.3d at 1190 (emphasis added). Further, the indictment described the manner and means of the conspiracy "in some detail:"

> The indictment alleged that Chalker became the pharmacist-in-charge at Pop's Pharmacy in or around September 2014, and it claimed that Chalker and his co-defendants took steps to conceal Liva's ownership of the pharmacy. Thus, for example, the indictment charged Chalker with "sign[ing] and caus[ing] to be submitted an Express Scripts provider certification and pharmacy disclosure form on behalf of Pop's Pharmacy in which he" failed to disclose Liva's ownership interest and "falsely and fraudulently represented" that the pharmacy's owner "had not been the subject of a criminal prosecution involving fraud." The indictment accused Chalker of causing "Pop's Pharmacy to submit false and fraudulent claims to Medicare, TRICARE, and Medicaid for compounded drugs and other prescription medications, including expensive pain and scar creams, that were not medically necessary and/or were never provided." Lastly, the indictment claimed that Chalker and his co-defendants "oftentimes did not collect copayments" to "induce beneficiaries to accept medically unnecessary medications."

Id. (internal citations omitted). Similarly, in the manner and means section of the Bane indictment, the government alleged that Defendants

> did falsify and fabricate and cause to be falsified and fabricated, pulse oximetry test results in order to create the illusion that certain Medicare beneficiaries were in need of and qualified for Medicare reimbursement for oxygen therapy and oxygen related services.

13

> In addition, the manner and means sections alleged that Defendants forged physicians' signatures and included fraudulent data on Medicare claims that were submitted to CMS through Palmetto GBA.

2010 WL 962779 at *1. And in <u>Robinett</u>, the court found that the allegations of a health care fraud conspiracy were sufficient where the indictment charged that

> defendants caused the submission and concealment of false and fraudulent claims to Medicare and caused the diversion of the proceeds of the fraud for their personal use and benefit to unlawfully enrich themselves. Regarding Robinett's alleged role in the conspiracy, the indictment charges that other defendants and coconspirators provided and caused to be provided false and fraudulent plans of care to Robinett; that Robinett would falsely certify that beneficiaries qualified for home health care, despite the fact that the beneficiaries were not under his care and did not qualify for home health care; that Robinett caused Medicare to be billed for these false certifications, and unnecessary home health services, and that Robinett caused Medicare to be billed for other services these beneficiaries did not need.

2018 WL 1640116, at *3. The indictments in <u>Martin</u>, <u>Thomley</u>, and <u>Weekes</u> also all similarly contained detailed factual allegations regarding the fraudulent nature of the conspiracy including that the prescriptions were medically unnecessary, medical services were not provided, and/or other materially false representations were made.

Here, the Indictment does not contain the language of the substantive health care fraud statute, it does not set forth any facts suggesting a scheme or artifice to defraud, nor does it indicate the manner and means of a conspiracy

14

to defraud TRICARE. Although the Government cites to the health care fraud statute as an object of the conspiracy, it provides no facts suggesting how the conduct alleged violates that statute. Similar to the indictment in Bobo, despite a reference to "fraud in a health care benefit program," the Indictment in this action fails to provide "the required specificity." Bobo, 344 F. 3d at 1084. While it is true that an indictment for conspiracy does not need to allege the predicate offense with the same specificity as a substantive count, here, there is no health care fraud alleged at all. Indeed, from the Indictment, it is impossible to discern if the purported fraud Jackson conspired to commit was one that involved: (1) prescriptions for compounded creams that were medically unnecessary, (2) a provider that lacked authority to prescribe the creams, (3) the submission of prescriptions for compounded creams that were not in fact provided to the patients, or (4) one in which the defendants in some other manner agreed to make false representations to induce TRICARE to pay for the claims. This Indictment requires Jackson to speculate as to the scheme to defraud he purportedly conspired to commit. But, in Bobo the Eleventh Circuit held that "[a]n indictment that requires speculation on a fundamental part of the charge is insufficient." See id. (citing Hamling, 418 U.S. at 117, 94 S.Ct. at 2907). The Indictment here, as to the charge that health care fraud was an object of the conspiracy, is plainly insufficient.

15

The Indictment also fails to allege an overt act in furtherance of a conspiracy to commit health care fraud. See generally Indictment. "There are three elements for proof of [a 18 U.S.C. § 371] conspiracy: (1) agreement between two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in that agreement by the defendant; and (3) an overt act in furtherance of the agreement." United States v. Broughton, 689 F.3d 1260, 1277 (11th Cir. 2012). The only overt acts alleged are the receipt of kickbacks by all three Defendants in return for submitting prescriptions for compound creams on behalf of TRICARE beneficiaries to a co-conspirator pharmacy. See Indictment at 8.³ Although the acts alleged might well further a conspiracy to pay or receive illegal kickbacks, nowhere in the Indictment are there any factual allegations that the Defendants defrauded a health care benefit program by performing such acts. See 18 U.S.C. § 1347. For all of these reasons, the Court finds that the Indictment fails to sufficiently allege health care fraud as an object of the conspiracy charged in Count One. See Belt, 868 F.2d at 1211.

At the hearing, the Court directed the parties to address whether a bill of particulars could cure any purported defect in the Indictment. See Transcript (Doc. 114) at 11-12. In response, the Government states that it "recognize[s]

---

³ Jackson's receipt of this payment is also the basis for the substantive charge against him in Count Four for a violation of 42 U.S.C. § 1320a-7b(b)(1)(A), the solicitation and receipt of an illegal kickback in exchange for the furnishing or arranging for the furnishing of compounded creams for which payment may be made by TRICARE. See Indictment at 9-10.

16

that [a bill of particulars] may not cure the defect in the indictment as to the health care fraud." Government's Supplemental Response at 3. Indeed, "[a] bill of particulars cannot cure a legal deficiency; rather the proper result is dismissal of the indictment." United States v. Superior Growers Supply, Inc., 982 F.2d 173, 177 (6th Cir. 1992); see also Russell v. United States, 369 U.S. 749, 770, 82 S. Ct. 1038, 1050, 8 L. Ed. 2d 240 (1962) ("But it is a settled rule that a bill of particulars cannot save an invalid indictment."). As such, a bill of particulars here would serve no purpose. The health care fraud object of the conspiracy in Count One is due to be dismissed and the Government's request for a bill of particulars is due to be denied. Accordingly, any forfeiture allegations that rely on a conviction for conspiracy to commit health care fraud are also due to be dismissed.

In light of the foregoing, it is

**ORDERED:**

1. Defendant Mario Correa Jackson's Motion to Dismiss (Doc. 96) is **GRANTED.**

2. The health care fraud object of the conspiracy charged in Count One and any related forfeiture allegations are **DISMISSED.**

3. The parties are **DIRECTED** to submit an agreed upon redacted Indictment for use at trial.

**DONE AND ORDERED** in Jacksonville, Florida, this 8th day of July, 2022.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

lc28

Copies to:
Counsel of Record

18